The SUN RUBBER COMPANY, Plaintiff,

v.

NATIONAL LATEX PRODUCTS COM-
PANY, Harry R. Gill, Sr., and Harry
R. Gill, Jr., Defendants.

The SUN RUBBER COMPANY,
Plaintiff,

v.

The AKRON PRESFORM MOLD COM-
PANY and Theodore A. Miller,
Defendants.

Civ. Nos. 31211, 31212.

United States District Court
N. D. Ohio, E. D.

Jan. 29, 1958.

See also D.C., 148 F.Supp. 469.

A. L. Ely, Bernard C. Frye, Akron, Ohio, for Sun Rubber Co.

Evans & McCoy, Cleveland, Ohio, for National Latex Products Co.

A. H. Oldham, Vern L. Oldham, Akron, Ohio, for Akron Presform Mold Co.

JONES, Chief Judge.

By consent of the parties, these two cases were consolidated for trial for the reason that they each involve the validity and infringement of the same patents. The patents are related to each other, each by reference in the patent, as are the parties related contractually.

One of the patents, Molitor No. 2,629,-134 provides for a process or method for making hollow plastic articles. The other, Martin, et al., No. 2,629,131 discloses a machine for making the hollow plastic articles according to the process patent.

The defense is invalidity for lack of invention because of anticipation by earlier patents and because of earlier known publications. It is not thought essential to decision that a detailed recital be given of the extensive evidence and opinions developed in the trial of this case; nor of the wide sweep of the discussions involved in considering the patent claims in issue and the disclosures of the prior art patents and publications. It will be sufficient to set down my reactions, findings and conclusions as to the issues of validity and infringement. The cases were tried before the court for approximately ten days, including extensive oral argument at the conclusion.

▆ I belong to the school that still believes the granting of a patent by the Government presents a strong evidential

presumption of validity, and that a heavy burden rests upon those who challenge its validity in an infringement suit. This, I regard as a sound rule, and, unless lack of invention clearly is evident to the court, the defense is of no avail.

Defendants rely chiefly upon the Italian Patent to Delacoste as a challenge to the validity of Molitor's process. Reliance almost entirely rests upon that Italian patent, and defense otherwise depends upon invalidity through lack of invention.

It will be interesting first to determine whether Delacoste, as a foreign patent, is a valid anticipation. Why was Delacoste rejected by the Patent Office? No definite answer is provided. Therefore, I am driven to conclude that it was rejected by the Patent Office probably either for lack of clarity or for lack of patentability. Despite expert Beal's testimony that he could, as one skilled in the art, practice the Delacoste process as disclosed in the patent and without any research or experimentation, I cannot adopt such view from the evidence before me. There appears to have been no history of any practice of Delacoste. On his earlier visit to the United States he mentioned that he had such a patent but did not disclose the process to the men he met. Only on a later visit and upon insistence of the people in Massachusetts with whom he was experimenting (later than Molitor's filing) did he file his second application in the United States Patent Office, endeavoring to clarify and set forth the various steps essential to successful prosecution of the later application.

Working with plastics such as vinyl resins and the like as a more useful and durable material than rubber or its synthetic substitute such as latex was not new (nor was it claimed to be) with Molitor, but the new and improved method for manufacturing completely hollow plastic (plastisol) articles by continuous and automatic rotative mechanism with correlation of timing and temperature witnessed the first commercially successful method and means for producing such articles in an impressive way and in greatly increased and substantial quantities.

But if it should be thought that Delacoste is a valid reference, (which I previously have held as a foreign patent required a clear and definite disclosure which would permit one skilled in the art to practice the invention without experimentation, Simmons Co. v. Champion Spring Co., D.C.1929, 82 F.Supp. 910) then I ask, has any one, under this evidence tried to produce a complete thin-walled hollow plastic article in accordance with the claims and method disclosed by Delacoste? Expert Beal told of the numerous types of hollow articles made of "plastisol" and elements old in the art, but no physical examples or exhibits of drawings, photographs or other publications were produced to support his statements of the earlier practices of which he so freely related in his testimony. He compared Claim 2 of Delacoste with Claim 1 of Molitor in issue. Delacoste was directed to making hollow objects out of synthetic resin completely polymerized, held in suspension in suitable plasticizer, and this to be accomplished by rotating in all directions of closed molds, into which had been deposited a desired amount of the material. The molds to be heated so as to transform the enclosed material to a "gel". Thereafter the mold to be opened and the hollow object removed. No details as to how to practice the process, or the mechanical steps required to accomplish the manufacture of the completed hollow object were given.

One step missing in Delacoste and, as I think, essential (and not obvious) to produce the article is the recognition of the temperature change to accomplish the transition of the material from gel to fusion.

Without considerable experimentation and a search for disclosures in the wide field of heat treating, time exposure and range of temperatures, together with the failure clearly to define the type and composition of material required to make the character of article intended, leaves

Delacoste without effective force as anticipation. It is my view that the method or process of Delacoste cannot be accorded the status of an anticipation of Molitor. This view seems to me to be consistent with the fact that Delacoste's first application was rejected by the United States Patent Office based upon his Italian patent.

Delacoste did not make obvious the complete essential details of his process so that it could be practiced by one skilled in the art without considerable experimentation in materials, as well as in the necessary steps required to accomplish the result if the successful making of the type and character of thin-walled hollow plastic articles here under consideration could be accomplished.

I find that the Delacoste Italian patent does not have the required clarity and disclosure which would be so obvious to one skilled in the art as to enable him to practice the Delacoste method or process without experimentation and this is especially fatal to a foreign patent as a bar. Delacoste does not anticipate Molitor (Simmons Co. v. Champion Spring Co., supra).

Molitor's disclosure of a successful correlation of the temperature and timing elements and the indicating of detailed steps in a continuous automatic method of producing the article certainly can not be attributed to the earlier disclosures of Delacoste, or any other earlier citation.

There is no doubt as to the evidence of experimentation, research and development by others in the field of vinyl resins such as plastisol and other plastics by those who have been engaged in rubber and latex manufacture; this was developed in the evidence as to slush molding and the Kaysam method, but no one theretofore had disclosed the unique and original combination which, with some novel elements and also some old or known elements, produced a successful process for making thin-walled hollow plastic articles, such as have been exhibited here, accurately, in my judgment, defines the value of the Molitor patent.

The patentee stated that he was presenting to the Patent Office a new and improved method of manufacturing articles from synthetic vinyl resins, and detailed the steps through which he proposed to accomplish it.

Temperature and timing may be said to be the important elements in the Molitor process which are not found, or obvious, in the earlier art.

Perhaps I should give my reaction to a further attack upon the Molitor validity. Defendants have attacked Molitor on the ground that statements made by his attorneys in the Patent Office were misleading. Under the evidence, I am unable to find that this challenge is sustained or presents a bar to the validity of his patent. The Molitor patent is valid.

Next, in an orderly way, is the consideration of the challenge presented against the validity of the Martin and Rekettye Patent No. 2,629,131, claims 18, 31, 32 and 33 in issue. Probably the most pertinent patents relied upon by the defendants as anticipation are Voelke No. 803,799; Kay No. 1,998,897 and Killian No. 2,128,827. These three, I should say, are in the defendants' front line as bars to novelty in Martin. Expert Beal, as it seemed to me, found it too easy and simple to read these earlier machines on the plaintiff's structure, but, in my judgment, quite drastic changes, modifications and re-arrangements of parts definitely would be necessary to bring about equivalents and such changes, in my view, were not obvious to those skilled in the art.

It is my impression that the prior art patents chiefly relied upon for anticipation were not thought to disclose all of the steps claimed by Martin, but rather they disclosed sufficient of the important features of Martin so that one skilled in the art of rotational molding of hollow articles from plastic materials in a continuous operation well could have produced the structural design of Martin. This was, I think, conceded by Mr. Hagen in respect of the so-called Kaysam method, the manufacturing mechanism of

which did not, as I see it, anticipate Molitor or Martin. Perhaps some phases of the Kaysam process and operation could account for earlier practices of the rotational casting art, but considerable modification and more than engineering skill would in my opinion have been required to bring about the equivalent of the plaintiff's method and operation. The steps as practiced, according to Mr. Hagen's testimony, were not the unique and original combination of an automatic, continuous rotational operation which produced and resulted in a completed article without further treatment. My opinion is, and I so find, that the Kay Patent, or Kaysam practice is not an effective anticipation of Martin or Molitor. This also I feel I can say respecting the Voelke Patent, No. 803,-799. I do not regard the manufacture of the automobile horn bulb more than a year before as a bar to the patent rights here involved.

It is axiomatic that the job of reconstruction of earlier patents becomes easier after the challenged structure has been disclosed. This is particularly true in respect of the extensive reconstruction of the Killian Patent as proposed by Mr. Beal to make it read on Martin. It might be well in passing to state that the Killian Patent was declared invalid by Judge Learned Hand.

The Martin machine provided an automatic continuous means whereby, from the pouring of the desired amount of material (plastisol) into closed molds until the extraction of the completed article, no manual operation was required. This had not theretofore been accomplished or disclosed in any earlier patent or publication. While it is true, as urged by defendants' counsel in argument, that a finding of validity of the Martin patent over earlier citations and references will result in an exclusive monopoly in the art, nevertheless, if its novelty, utility and commercial success are established the result will have to be accepted.

It is my judgment that the defenses against the validity of Martin and Rekettye Patent No. 2,629,131 are not suffici-

ent to overthrow it and I find the patent valid.

Coming now to the more difficult question as to whether the defendants' manufacture by the Akron Mold machine infringes the plaintiff's patent, I recognize that the prior art and earlier practices present some potent disclosures of various elements and features in the art of rotable mold casting of hollow articles from different fusible materials, which must require the patent claims in issue to be held to a somewhat restricted scope. But plaintiff does not claim broad coverage for its patent as pioneer or original as to all the elements disclosed. It is as I have stated elsewhere, a unique and original combination of an automatic, continuous rotational operation which produced and resulted in a completed article without further treatment.

The articles furnished for publication in the Ashland Times and "Modern Plastics" describe defendants' method and operation in the making of hollow toys from vinyl resins (plastisol) and the deposition testimony of Wittington, representing the development of the process and so-called Miller machine, give strong support to a conscious copying of the plaintiff's method and machine. While, as I stated above, the court can not give the scope and reach of a pioneer patent to the claims in issue, yet there is sufficient disclosure of original and valid features to cover what the defendants are doing. The testimony of Sessions; the deposition of Wittington; and ocular demonstration of the machine before the court convince me that the defendants' so-called Miller machine and manufacture infringe. One cannot escape infringement by a variation in design or departure in process with no substantial or effective difference.

The evidence offered in support of defendant Akron Mold's tenth paragraph of its answer as to misuse of the patent rights by the plaintiff in respect of the provision of license agreements is not sufficient and not satisfactory so as to deny the relief prayed for by the

plaintiff. The alleged discrimination in license agreements as to Goodrich, Sherwin-Williams and perhaps others is satisfactorily explained in the consideration for, and the concessions made, by the favored licensees. There was consideration for such second license agreements and therefore no discrimination amounting to misuse.

Since defendant Akron Mold designed the Miller machine in cooperation with Wittington for the purpose of manufacturing the National Latex articles, it must be held as a contributory infringer.

What has been said is regarded as compliance with Rule 52, 28 U.S.C.A.

Decree of validity, infringement and injunction may be entered, with the usual provision for reference on damages.