The **BARR RUBBER PRODUCTS COMPANY, Plaintiff,**

v.

The **SUN RUBBER COMPANY, and Wonder Products, Inc., Defendants.**

**No. 60 Civ. 4327.**

United States District Court
S. D. New York.
Jan. 10, 1968.

See also D.C., 253 F.Supp. 12.

---

Ely & Golrick, Cleveland, Ohio, Albert L. Ely, Jr., Cleveland, Ohio, of counsel, Darby & Darby, New York City, Harvey M. Brownrout, New York City, of counsel, Theodore A. Lazar, Columbus, Ohio, for plaintiff.

Pennie, Edmonds, Morton, Taylor & Adams, New York City, Thomas F. Reddy, Jr., New York City, of counsel, Hamilton & Cook, Akron, Ohio, Everett R. Hamilton, Phillip L. Kenner, Akron, Ohio, of counsel, for defendants.

### MEMORANDUM

FRANKEL, District Judge.

Dealing with the question left open in the court's findings and conclusions of October 20, 1967, as amended on November 21, 1967, 277 F.Supp. 484, plaintiff has applied for an award of attorneys' fees in a substantial amount. Defendant opposes the application, urging that the circumstances and outcome of the several issues are such that each party should be left to bear its own counsel fees. The issue centers, of course, upon 35 U.S.C. § 285, which provides:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Both sides have recognized that the main feature of this case marking it as "exceptional" in a seemingly pertinent sense is the court's finding that the trial record was "blighted by perjury in significant respects." That grave determination has been the subject of extensive written and oral submissions on defendant's application for reconsideration, which was denied, except in minute respects, in an opinion and order of November 21, 1967.[1] It seems clear to the court that the findings on this subject—and, most importantly, the extensive labors required of plaintiff's counsel to attain them—warrant and require a substantial award to plaintiff under the statute.

On the other side, defendant recalls correctly that plaintiff pressed, in extensive pretrial as well as trial efforts, a number of contentions which proved, in the court's view, to be wholly or

---

1. In its written presentations on the subject of counsel fees, defendant offers the opinion that the subject on which the court found perjury was really immaterial, and that plaintiff's claim should be heavily discounted or erased on this score. The suggestion is without substance, as the court has sought to make clear both in its original opinion and in comments during argument on the motion for reconsideration. Moreover, even if the point were plausible, its supposed propriety at this stage would be highly doubtful. The issue on which the court found false defense testimony was considered at length on the trial, in depositions, and in the post-trial briefs. It is late and unhelpful to intimate that the whole topic should be treated now as an inconsequential aside.

In a further attempt to minimize the perjury findings, defendant mentions that on reargument the court "recognized * * * it was possible it was mistaken." The court has, indeed, in this case as in others, contemplated explicitly the possibility that it might be wrong. But such acknowledgments of fallibility ought not to be viewed even as debater's points. Whether or not expressions of humility are suitable for judges during exchanges on oral argument, the point of significance is that the court made its finding on the regrettable subject of perjury only after sober study and thought sufficient to result in a clear and confident (if not mathematically certain) judgment that the evidence required it.

largely baseless. It is strongly arguable that such factors should have no weight in defendant's favor because the test of 35 U.S.C. § 285 centers upon "unfairness" and "bad faith" as criteria in determining whether and how much to award as attorneys' fees. See, e. g., Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 267 F. Supp. 726, 787 (S.D.Cal.1966); Plymouth Rubber Co. v. Minnesota Mining & Mfg. Co., 203 F.Supp. 595, 601 (D. Mass.1962), modified on other grounds and aff'd, 321 F.2d 151 (1st Cir. 1963); Park-In Theatres v. Perkins, 190 F.2d 137, 142 (9th Cir. 1951); AMP Inc. v. Burndy Corp., 332 F.2d 236, 239 (3rd Cir.), cert. denied, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964). Nevertheless, while plaintiff's good faith is not questioned, the subject lies in discretion, and the burdens entailed by lengthy contentions (both by evidence and argument) found to be essentially unsubstantial ought ultimately to be a factor in the reckoning.

Defendant also argues that its earlier prosecution of the patent to a victory in the Sixth Circuit should diminish or eliminate plaintiff's claim for attorneys' fees. This would normally be a cogent argument. In the circumstances of this case, however, for reasons the court has reviewed earlier (see 277 F.Supp. at 498–503), it is deemed to have no weight for present purposes.

Coming, then, to the delicate subject of hours and dollars, plaintiff shows a total of 4,634.5 hours spent on this protracted case by its lead counsel. It shows $12,051.88 paid for services and disbursements by associate counsel. It lists, in addition, 749 hours by such associates not included in the foregoing figure. And it records a total of $30,-267.92 in disbursements by lead counsel

over the long and painful career of the litigation.[2]

Defendant raises no questions about plaintiff's figures, but rests mainly upon the proposition that plaintiff should receive nothing for a variety of reasons touched upon earlier in this memorandum.

In addition, defendant offers some figures to support its offsetting theories, and these supply guidance helpful for the court's ultimate determination. Defendant states in this connection that some 45 days were spent on depositions concerning some of the subjects on which plaintiff did not prevail. For services of counsel relating to those efforts, defendant reports from its attorneys' time records an estimated cost exceeding $20,000. Additional expenses for the same activities—disbursements, excerpting, research, etc.—are stated to bring the total cost above $50,000.

Plaintiff observes, correctly, that not all of the energies devoted to subjects on which defendant succeeded should be included in the "discount" defendant seeks. For example, discovery aimed initially at such subjects proved useful in the end for issues on which plaintiff prevailed, including the vital questions on which defendant's witnesses were found to have testified falsely.

Considering all the issues on which defendant succeeded, extrapolating from the figures defendant has supplied—and acknowledging that this is not a subject susceptible of weighing on jeweler's scales—the court assigns a total sum of $100,000 to this category of defendant's expenses. It seems clear, however, that nothing like all of this should be deducted from the award for plaintiff. To begin with, the problem is not one to be resolved by adding "issues" as fungible counters on one side or the other. All

---

2. The total of $30,267.92 appears from plaintiff's compilation to include an item of $435.60 expended in 1966–67 by associate counsel rather than lead counsel. If this inference is correct, it would require subtraction of the latter amount from lead counsel's disbursements and the addition of the same amount to the total for services and disbursements by associate counsel. It seems apparent, however, that this revision would make no difference in the computation and end result recorded in this memorandum.

the issues pale in this context against the central one of bad faith on which plaintiff's entitlement is primarily rested. Furthermore, not all the points lost by plaintiff were frivolous or weightless. And, finally, as already noted, not all the expenses even on weightless issues were "wasted" or unnecessary in the final analysis.

After reckoning at length with such diverse and only vaguely quantifiable factors, the court will allow as a "credit" to defendant against plaintiff's gross award the sum of $50,000.

Additional deductions are required before arriving at a suitable figure. Plaintiff begins its computation from a time antedating the lawsuit. While the position is arguable in the circumstances of this case, it is rejected. Accordingly, for this reason, 372 hours (based upon a calculation from plaintiff's affidavit) are deducted from the total reported for lead counsel. Similarly, this leads to deduction of $1,542 from plaintiff's total claim for disbursements.

An additional deduction of forty per cent will be made from the gross award to plaintiff. This reduction is intended in part to reflect the court's judgment that over the course of this seven-year litigation plaintiff has expended some appreciable amount of duplicative effort and non-essential labor. The judgment relates to issues on which plaintiff prevailed as well as those mentioned earlier, which have been won by defendant and were held by the court to have been quite clearly unsubstantial. The forty per cent reduction will be applied against the totals remaining after the preceding deduction—namely, to the figures of 4,262.5 hours of lead counsel time, $28,725.92 in disbursements, 749 hours for associate counsel, and $12,051.88 for services and disbursements by associates. Deducting forty percent from these figures leaves, respectively, 2,557.5 hours for lead counsel, $17,235.55 for disbursements, 449.4 hours for associate counsel, and $7,231.13 for services and disbursements by associates.

■ Employing a scale which is not meant to determine "worth" as measured in the market for legal services, but which represents a compendious "feel" of what the court deems just for all the peculiar circumstances of this particular case, the court will assign a value of $30 per hour for the time of lead counsel and $20 per hour for his associates. Accordingly, the remaining net of 2,557.5 hours for lead counsel is translated into $76,725. Similarly, for 449.4 hours of associates' time, the figure is $8,988. To these must be added the figures for (1) disbursements and (2) services and disbursements by associates—namely, $17,235.55 and $7,231.13. The resulting total is $110,179.68.

■ From this last total, as heretofore stated, the further sum of $50,000 will be deducted. This leaves $60,179.68, and this final figure will be awarded to plaintiff under the court's decree pursuant to 35 U.S.C. § 285.

The final sum, especially when it reaches the last sixty eight cents, has a superficial appearance of precision and minute calculation. The appearance is not intended to be accepted. The result represents the court's best efforts (starting from specific and undisputed figures supplied by plaintiff) to express and to measure, with only the approximate accuracy the subject will allow, a determination which must after all state in money terms a host of imponderables drawn from professional experience, judgment, and the quest for fairness in appraising the unique qualities of the unique case.

Upon the basis of this memorandum and the court's findings and conclusions of October 20, 1967, as modified November 21, 1967, counsel will settle a decree as follows: Plaintiff will serve and submit, on or before January 18, 1968, its proposed decree. On or before January 25, 1968, defendant may serve and submit its counter-proposal, noting and justifying the respects, if any, in which it differs from plaintiff's.