The BARR RUBBER PRODUCTS COMPANY, Plaintiff-Appellee-Cross Appellant,

v.

The SUN RUBBER COMPANY, Defendant-Appellant-Cross Appellee,

and

Wonder Products Company, Defendant.

Nos. 538–539, Dockets 32319, 32320.

United States Court of Appeals, Second Circuit.

Argued June 4, 1969.

Decided April 30, 1970.

Thomas F. Reddy, Jr., Sidney R. Bresnick, Pennie, Edmonds, Morton, Taylor & Adams, New York City, Everett R. Hamilton, Phillip L. Kenner, Hamilton, Cook, Renner & Kenner, Akron, Ohio, for The Sun Rubber Co.

Jacobs, Persinger & Parker, New York City, Ely, Golrick & Flynn, Albert L. Ely, Jr., Cleveland, Ohio, for the Barr Rubber Products Co.

Paul W. Williams, Allen S. Joslyn, Lawrence C. Browne, Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for amicus curiae, McNeil Corp.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The Sun Rubber Company (Sun) and the Barr Rubber Products Company (Barr) are competing manufacturers of plastic toys. Sun Rubber is the holder of a patent, U.S. Patent No. 2,629,134, issued February 24, 1953, on an application filed June 27, 1950, which describes a process for producing flexible hollow articles, such as balls, dolls and other toys from plastic. The process requires that a mold containing a liquid mixture of vinyl resin and plasticizer (commonly known as a vinyl plastisol) be rotated slowly on several different axes while heat is applied at a single high temperature. The rotation causes the liquid to spread evenly along the inner well of the mold, and the heat then causes the liquid first to solidify (gell) and then to harden (fuse) around the mold. Thereafter, the mold is cooled and the finished object so produced is removed. Earlier procedures, principally so-called slush casting, first gelled the plastisol at a temperature around 200° and then fused the gell at higher temperatures which, depending upon the desired thickness of the article to be produced, ranged

from 300 to 350°F. Concededly there are numerous advantages of a single temperature process over the other methods employed in the industry for molding articles of plastisol: the weight of the product is more accurately controlled; the time of manufacture, formerly consuming a day or more, is reduced to a fraction of an hour; shrinkage of the article produced is significantly less; distortion and tearing are largely eliminated; and scrap is minimized. Consequently, the process set forth in Sun's patent appears now to be the preferred means for producing plastisol products commercially. Since the issuance of the patent Sun has licensed it to about twenty producers in the United States who have paid approximately $1,000,-000 in royalties.

As is not infrequently the case, the commercial success of a patent tends to generate litigation. The validity of Sun's patent was first subjected to judicial adjudication more than a decade ago in an action for infringement brought by Sun against National Latex Products Company and Akron Presform Mold Company in the United States District Court for the Northern District of Ohio. After a ten day trial, during which motion pictures were shown concerning the operation of the Sun process and in which considerable expert testimony was brought forth, the district court rejected defenses of patent misuse and of patent invalidity based upon obviousness and anticipation and held Sun's patent valid. Sun Rubber Co. v. National Latex Products Co., 159 F.Supp. 661

(N.D.Ohio 1958). On appeal the Sixth Circuit (2–1) affirmed, 274 F.2d 224 (6 Cir. 1959), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022 (1960).

In this present action, commenced by the Barr Rubber Company on November 3, 1960, the validity of Sun's patent is again challenged.[1] Barr's complaint sought a declaratory judgment of patent invalidity, or, if the patent should be held valid, a declaratory judgment of noninfringement or nonenforceability. Additionally, the complaint sought damages for and injunctive relief from alleged unfair competition by Sun, and from conspiracies in violation of the antitrust laws between Sun and the Wonder Products Company and between Sun and an unnamed machinery manufacturer and an unnamed manufacturer of plastisol components.[2] Sun counterclaimed, alleging infringement of its patent and unfair competition by Barr and, on its part, sought injunctive relief and damages.[3]

With the pretrial proceedings thought to be nearing completion after a space of four and one half years and after the taking of over 6000 pages of pretrial deposition testimony, Barr moved, pursuant to Rule 20, Fed.R. Civ.P., to join the McNeil Corporation and the B. F. Goodrich Company as party defendants, claiming to have finally unmasked the identities of the unnamed machinery manufacturer and the unnamed manufacturer of plastisol components referred to in the complaint. The motion, addressed to District Judge (now Circuit Judge) Feinberg who had been assigned to the case under the Southern District

---

1. The validity of Sun's patent was also in issue in Sun Rubber Co. v. Horsman Doll Co., Civil Action No. AC–902 (D.S.C. 1966). The defendant therein consented to the entry of judgment, acknowledging validity.

2. By stipulation of the parties, though named as a defendant, Wonder Products has been permitted to stand aside and await the outcome of the contest between Barr and Sun.

3. Sun initially filed a counter infringement suit in another court against Barr and

Barr's then president. Sun Rubber Co. v. Barr Rubber Products Co., Civil Action No. 8536 (N.D.Ohio), filed November 7, 1960. After numerous stays pending the outcome of the New York litigation, the suit was eventually dismissed without prejudice on May 7, 1964. A subsequent attempt to sue Barr's president personally in a New York federal court failed for lack of venue. Sun Rubber Company v. Dorn, No. 62 Civil 1016 (SDNY).

Court Rules as a Rule 2 judge, was denied by him on the ground that the joinder of two additional parties at such a late date would unnecessarily delay the trial for years.

Following approximately another year and a half of additional discovery and various motions not particularly relevant to this appeal,[4] this bitterly contested litigation finally came on for trial on December 5, 1966 before Judge Frankel, who had replaced Judge Feinberg upon the latter's appointment, in the interim, to our Court of Appeals. Contrary to the holdings in the earlier Ohio litigation, the court below, purportedly relying upon three separate and distinct grounds, this time after a seven week trial, held Sun's patent invalid and unenforceable. Noting that Sun does not claim any invention with respect to the composition or formulation of properties of plastisols and that rotational casting is a 100 year old process at the very least, the court found Sun's invention is not a unique discovery but merely an obvious combination of old and well-known elements, and therefore does not satisfy the requirements of patentability set forth in 35 U.S.C. § 103.[5] The court disposed of the claim that the invention lay in a continuous application of a single

heat source rather than in a two-step process by characterizing it as a "baseless after-thought" and a "recently contrived, trivial, misleading irrelevancy," which was inconsistent with the theory of invention advanced by Sun and accepted by the two courts in the Ohio case. After a comparative analysis of the Sun patent with an earlier Italian patent (Delacoste, No. 440,295) issued by the Italian Government on October 9, 1948, the court also concluded that the teachings of the Italian patent anticipated everything the Sun patent allegedly taught, and, accordingly, under 35 U.S.C. § 102(b)[6] the Sun invention was not entitled to patentability.[7] Finally, Sun was denied enforcement of its patent on the ground that the judges of the Sixth Circuit and the Ohio district judge were perjuriously misled in material respects by Sun. Specifically, the court below held that Sun by its witnesses and through its documentary evidence deliberately misrepresented to the Ohio court that the date of invention of its patent was April 1948 when the process was not actually discovered until several months later. Upon a post-trial application the court found, in the light of the last ruling, that this was an "exceptional case" within the meaning of

---

4. Technically, Barr is appealing the disposition of several of these interlocutory motions; they are set forth and decided as fully as need be later in the opinion. E. g., see *infra* note 9.

5. § 103. Conditions for patentability; non-obvious subject matter
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been *obvious at the time invention was made* to a person having ordinary skill in the art to which said subject matter pertains. * * *

6. § 102. Conditions for patentability; novelty and loss of right to patent
 A person shall be entitled to a patent unless—
 * * * * *
 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *.

7. In fact, the court found that the Delacoste teachings were superior with respect to defining the mode and speed of rotation. Delacoste suggested the mold be rotated "around two axes preferably at right angles" at a speed of "10 revolutions per minute." Sun's patent simply instructed the rotation of the mold "in a multiplicity of planes."

35 U.S.C. § 285 [8] and in a subsequent opinion awarded Barr Rubber $60,179.-68 in attorneys' fees. Furthermore, for purpose of full adjudication, the district court alternatively held that if it should be held upon appeal that Sun Rubber's patent is, contrary to the district court's holding, valid and enforceable, then Barr Rubber is an infringer. Basing its holding upon its finding of "unclean hands" the court dismissed Sun's counterclaims for injunctive relief. Barr's antitrust and unfair competition charges against Sun and its alleged conspirators were dismissed as unproven, as were Sun's quests for damages, for infringement, and for unfair competition.

These decisions are reported at 277 F.Supp. 484 (SDNY 1967) and 279 F. Supp. 49 (SDNY 1968).

Both parties appeal. Sun Rubber challenges the court's determination that its patent is invalid and the court's award of attorney fees to Barr. Barr Rubber contests the dismissal of the antitrust and unfair competition claims, the alternative finding of infringement if the patent should be upheld upon appeal, the method by which the amount of the award of attorney fees was computed, the interlocutory order denying its re-

quested joinder of the McNeil Corporation and the B. F. Goodrich Company as defendants, the denial of a motion for summary judgment that Sun's patent is invalid for violations of 35 U.S.C. §§ 184, 185,[9] and the denial of a motion it had made for the production of documents. In addition, on the day of oral argument in the Court of Appeals, Sun filed motions with us upon which we reserved decision until the writing of the opinion, in which Sun sought to have us take judicial notice of certain public documents and to have us order Barr Rubber to pay one half the cost of printing the parties' joint appendix inasmuch as both sides have appealed. We turn now to an examination of all these various issues.

### I.

Although the district court purported to be resting its determination that Sun's patent was invalid on three independent bases, the conclusion is inescapable that the finding of perjury influenced the court's disposition of the other two questions, obviousness and anticipation. The district court opinion explicitly states that plaintiff's showing that falsified evidence had been intro-

8. 35 U.S.C. § 285 reads:
 § 285 Attorney fees
 The court in exceptional cases may award reasonable attorney fees to the prevailing party.

9. The opinion denying Barr's motion for summary judgment is reported at 253 F. Supp. 12 (SDNY 1966) (Feinberg, J.).
 Section 184 prohibits the filing in any foreign country prior to six months after filing in the United States of an application for a patent in respect of an invention made in this country except when authorized by a license obtained from the Commissioner. Sun was permitted to file such an application after only sixty days had elapsed instead of waiting until the six months period had expired. This was permissible pursuant to Order No. 4025 of the Commissioner of Patents issued Jan. 31, 1946 and officially published on February 26, 1946. See 253 F.Supp. 12, at 13, n. 4. A license may also be granted retroactively if the Commissioner finds the early filing of an application abroad

was due to inadvertence. 35 U.S.C. § 184.
 Sun violated § 184 by filing for a patent in Canada nine days before the expiration of the sixty day period following its United States application, but was granted a license, ex parte, "retroactively authorizing the filing of the application in Canada as of August 16, 1950, two days before it actually was filed there." Id. at 14.
 Barr contended on the motion for summary judgment that under the circumstances issuance of the retroactive license was improper as a matter of law, and therefore that, pursuant to the prohibition contained in 35 U.S.C. § 185, Sun's United States patent was invalid. This attack upon Sun's patent was reiterated at trial and again held to be unfounded. It is not pressed on appeal.
 Similarly, the dismissal of Sun's action for unfair competition is raised, but not argued.

duced both in the Sixth Circuit and in the trial of the instant case constituted the most significant impetus for departure from the established rule that a " * * * decision on patent validity of another federal court, especially a higher one, is entitled to great weight, * * *. See Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124, 133 (2 Cir.), cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958)." 277 F.Supp. at 498. Upon appeal, therefore, central to a disposition of the multitude of issues inherent in this case, must necessarily be a ruling upon whether there was an intentional fabrication of evidence as the district court found there to have been. Because we do not find this ruling to be supported by the record, we reverse the judgment below and remand the case for a reconsideration in the district court of all the issues pertaining to the patent's validity.

## II.

■ At the outset we are troubled by the lower court's failure to define the quantum of proof required to substantiate a charge of perjury in a civil, non-criminal case of this kind. Generally, a civil plaintiff must prove his affirmative case by no more than a preponderance of the evidence. Ordinarily this is true even where a criminal act is charged as part of a civil case. See, e. g., Brown v. Tourtelotte, 24 Colo. 204, 50 P. 195 (1897); Drezner v. Civil Service Commission, 398 Ill. 219, 75 N.E.2d 303 (1947); Rost v. F. H. Noble & Co., 316 Ill. 357, 147 N.E. 258 (1925); Prince v. Aetna Casualty & Surety Co., 129 So.2d 71 (La.App.1961); Cooper v. Spring Valley Water Co., 16 Cal.App. 17, 116 P. 298 (1911). See also 9 Wigfore, Evidence § 2498 (3d ed. 1940) and cases cited therein. We assume from the lower court's silence that it applied this normal "preponderance of the evidence" test.

■ However, there is ample authority of long standing that to substantiate charges of fraud or of undue influence, at least in actions seeking the recovery of monies paid or the rescission or cancellation of contracts, a litigant must present "clear and convincing proof." United States v. American Bell Telephone Co., 167 U.S. 224, 241, 17 S.Ct. 809, 42 L.Ed. 144 (1897); Lalone v. United States, 164 U.S. 255, 257, 17 S.Ct. 74, 41 L.Ed. 425 (1896); United States v. Maxwell Land-Grant Co., 121 U.S. 325, 381, 7 S.Ct. 1015, 30 L.Ed. 949 (1887); Atlantic Delaine Co. v. James, 94 U.S. 207, 214, 24 L.Ed. 112 (1876); McDonnell v. General News Bureau, Inc., 93 F.2d 898, 901 (3 Cir. 1937); New York Life Ins. Co. v. Kwetkauskas, 63 F.2d 890 (3 Cir.), cert. denied, 289 U.S. 762, 53 S.Ct. 793, 77 L.Ed. 1505 (1933); Bowen v. B. F. Goodrich Co., 36 F.2d 306, 308 (6 Cir. 1929); United States v. Hays, 35 F.2d 948 (10 Cir. 1929); United States v. Paiz, 293 F. 755 (8 Cir. 1923). And see Troeder v. Lorsch, 150 Fed. 710, 714 (1 Cir. 1906), where it is stated: "[w]hen a person is charged with all the elements which constitute a heinous crime, although it be only on a civil issue, it shocks the judicial mind to refuse to give him the benefit of the usual presumption of innocence unless the adverse proofs are so far satisfactory as to be convincing." A civil tax penalty for fraud must also be established by clear and convincing proof. Rogers v. C.I.R., 111 F.2d 987, 989 (6 Cir. 1940); Bukowski v. United States, 136 F.Supp. 91 (S.D.Texas 1955); Owens v. United States, 98 F.Supp. 621, 627 (W.D.Ark.1951), aff'd, 197 F.2d 450 (8 Cir. 1952). Logic and reason demand that no lower standard of proof be applied in assessing a charge of perjury,[10] and especially so when a

---

10. The gravity of a finding of outright perjury is aptly revealed by the untoward consequences already experienced by Sun as a result of the determination below. Applications have been made by both National Latex Products Company and the Akron Presform Company to recall the mandate and to reopen the cases in the Court of Appeals for the Sixth Circuit. National Latex has also asserted a claim

finding that material evidence has been falsified permits the allowance of an adversary's attorney fees not otherwise recoverable. We hold, therefore, that the district court committed procedural error by applying the wrong standard of proof in adjudicating the charge that perjury had been committed.

### III.

■ Furthermore, irrespective of the failure of the court below to apply the proper standard of proof, we hold that the evidence did not suffice to prove the commission of perjury even if the "preponderance of the evidence" standard is applied as the test. Sun has consistently maintained, throughout its lawsuits, that April 1948 is the date of invention. The district court heard no testimony and saw no documents directly asserting the contrary. In holding that the invention date of April 1948 was a deliberate fiction, the court relied upon a multitude of scattered inferences which were unreasonably drawn from flimsy evidence.

The first, and perhaps the most significant, erroneous inference made below concerns the following letter written on November 30, 1956 by Sun's patent counsel to Canadian counsel with reference to the prosecution of a patent application in Canada:

I am in receipt of an Office Action, dated November 23, 1956, in the above entitled case in which the Patent Office cites Italian Patent No. 440,295, which was granted October 9, 1948, but was not printed until July 1949. We have met this patent in connection with certain litigation on the corresponding U. S. patent in this country and are prepared:

1. To point out the essential difference between the Delacoste patent and the disclosure in the Molitor application, and

2. To contest the effective date of the patent.

In connection with the latter matter, will you please advise me whether under the Canadian Patent Law the date of the grant is taken as the effective date of this patent or the date of the printing. *We can carry the date of the Molitor invention back of the printing date, but cannot carry the date of the invention back of the granting date of the Italian patent.* In this connection of course, I will have to be advised whether an earlier invention in the United States can be used in Canada to anticipate a situation of this character. (Emphasis in original.) 277 F.Supp. at 500–501.

This document, not before the Sixth Circuit, and received in the present action only in connection with a discovery proceeding relating to another subject, the court characterized as the precipitating factor exposing Sun's fraud and relied upon it heavily in arriving at its ultimate determination. The letter does not set forth any specific date of invention. Nevertheless, according to the trial judge, the letter very definitely constitutes an unexplained acknowledgment by Sun in 1956 "with memories fresher and all the documents more readily available," *Id.* at 501, that Sun could not claim a date of invention prior to October 1948 and that the April 1948 date of invention was subsequently conceived when "it became apparent that a still earlier date of

in the Court of Common Pleas in Ashland, Ohio, Sun v. National Latex Products Co., No. 30109, to recover damages and previously paid royalties. Another licensee has commenced an action in the United States District Court for the Northern District of Illinois, J. A. Dubow Mfg. Co. v. Sun Corp., Civil Action No. 68 C–1788, to recover royalties it has paid Sun in the past. And, of course,

the possibility that the remaining licensees may institute similar proceedings continues to be a real threat to Sun and to lurk in the background of this perpetual controversy. Further, the potential damaging impact the decision below is likely to have on the business and social reputations cf the witnesses is another substantial hardship that Sun and its people have been made to endure.

invention might be necessary to defeat claims of prior invention" made in the Ohio lawsuit. *Id.* at 501.

The relevant dates pertinent to an analysis of this issue are as follows:

December 1947—Delacoste patent application was filed in Italy.

April 1948 —Molitor's invention.

August 1948 —The time, two years before the filing of the Delacoste patent in Canada, which fixes the statutory bar against the filing of the Molitor patent application there.

October 1948 —Delacoste patent granted in Italy.

July 1949 —Delacoste patent appears in printed publication in Italy.

June 1950 —Molitor application filed in United States.

August 1950 —Molitor application filed in Canada.

Sun's position is that, assuming there are no essential differences between Sun's patent and the Italian Delacoste patent, the November 30, 1956 letter just inquires whether Sun could successfully obtain a Canadian patent despite the grant in October 1948 of a patent to Delacoste in Italy. More specifically, Sun argues that the reference to its inability to "carry the date of [Molitor's] invention back of the [October 1948] granting date of the Italian patent" has nothing whatever to do with the date on which Molitor actually devised the process of

rotational casting. Rather, Sun contends, the sentence refers to Rule 131(a) of the United States Patent Office.[11] Rule 131(a) states that a prior foreign patent does not require rejection of an application for a United States patent on the same invention if the applicant can establish that he completed his invention before the granting or printing of the foreign patent. However, the Rule further provides that this opportunity to establish priority of invention is open only to those applicants who file their United States applications within one year after the granting or printing of the foreign patent. Therefore, since Sun did not file its United States application until June 1950, more than a year after the grant of the Italian patent in October 1948, it could not "carry Molitor's invention back" beyond that date even though Molitor had perfected his process as early as April 1948. Read in the light of this background, Sun urges that the letter constitutes no more than an attempt to learn whether under Canadian law (1) there is a provision such as Rule 131(a) of the United States Patent Office and if so, whether the printing date or the day of the grant of the patent is the effective date in Canada of a foreign patent; and/or (2) whether there is a parallel, but somewhat different provision than Rule 131(a) and, if so, whether the date an application for a foreign patent upon an invention is filed or the date of invention itself is the critical date for purposes of measuring the Canadian carrying-back period.[12]

■■ Though the letter might have been more artfully phrased to say what Sun says it was intended to say, we find that, on balance, the inference drawn by the district court from this letter is un-

---

11. Rule 131(a) provides in pertinent part:
 131. *Affidavit of prior invention to overcome cited patent or publication.* (a) When any claim of an application is rejected on reference to * * * a foreign patent or to a printed publication, and the applicant shall make oath to facts showing a completion of the invention in this country before * * * the date of the foreign patent,

or before the date of the printed publication, then the patent or publication cited shall not bar the grant of a patent to the applicant, unless the date of such patent or printed publication be more than one year prior to the date on which the application was filed in this country.

12. See note 11 *supra.*

convincing. The only motive for the alleged perjury suggested by the district court is an unexpected twist in the Ohio litigation arising subsequent to the date of the November 30, 1956 letter. The inference drawn therefrom is severely undercut by an affidavit of Robert P. Molitor, the Sun chemist credited with the discovery of the invention patented, dated January 1955, nearly two years before the letter to the Canadian attorneys was written, in which he gives April 1948 as the approximate date he first successfully made hollow objects through rotational casting. Moreover, two of the three documents Sun urges us to judicially notice succinctly demolish the theory that Sun adjusted the date of invention backward sometime after the November 1956 letter was written, at a time when such adjustment appeared necessary to defeat a claim of prior invention.[13] These papers make clear that Sun was aware of the claim several weeks before the November 30, 1956 letter was written, and, therefore, tend to show that if there were an attempt to defraud the courts such an attempt would have been already under way and would have been reflected in the language of the letter.[14] Thus we reject the meaning the court below attached to the letter of November 30, 1956 and we find the letter entirely consistent with Sun's continual insistence that the discovery date of its patent is April 1948. Further, we observe that in at least one particular the letter supports rather than destroys Sun's position. In all likelihood, when Sun's counsel wrote "In this connection, of course, I will have to be advised whether an earlier date of invention in the United States can be used in Canada to anticipate a situation of this character," he did so with the April 1948 date in mind.

■ Aside from the aforementioned letter of November 30, 1956, we believe that the court improperly made additional inferences from other evidentiary matters to support its finding of perjury. It found that the defense falsified and knowingly contradicted a series of progress reports in order to sustain the attempted fabrication of the date of invention. In a report dated April 20, 1948 Molitor reported that satisfactory toys were produced by curing 40 to 50 minutes under infrared lamps. Molitor had testified that he could not recall using infrared lights for anything other than rotational casting. The report, therefore, was introduced in evidence, not to prove the date of invention, but merely as a device by which to aid Molitor's recollection of the date of invention, and to support his testimony. The court concluded, however, on the basis of the fail-

13. The only claim of prior invention ever even remotely brought to the surface in the Ohio case is the claim of the Molded Latex Products Company. The court below did not specify the claim of prior invention which allegedly led to Sun's scheme of falsification, but all indications strongly suggest that the court must have been referring to the Molded Latex claim. In this connection, Sun asks that we judicially notice a certified copy of "Statement of Prior Invention and Use of The Molded Latex Products Company," filed *in camera* with the Northern District of Ohio on October 19, 1956, and a certified copy of a stipulation dated November 6, 1956, allowing the clerk of the court to open the *in camera* evidence and to furnish each side a copy. The "Statement of Prior Invention and Use" gives the conception date of invention as May 7, 1947.

14. Barr contends, in addition to claiming that these documents should not now be judicially noticed because they were always available to Sun and should have been introduced earlier, that they are irrelevant inasmuch as they do not disclose when the sealed evidence actually was opened and made available to Sun and that, inasmuch as the "Statement" was that of an attorney, and therefore inadmissible at the time, Sun had no reason to become alarmed. Neither contention is persuasive. Though the motion to take judicial notice could have been submitted when the notice of appeal was filed, we are now compelled to grant the motion in view of the gravity of the issue to which the documents relate and in furtherance of the obvious interests of justice.

ure of the reports of April 1948 specifically to mention "rotational casting," on the basis of a reference in the report of April 20 to a "vented" mold for making a toy lamb, admittedly not suitable for rotational casting, and upon several other references to matters not identically consistent with the process of rotational casting, that these reports, found persuasive by the Sixth Circuit, did not relate to rotational casting at all. Sun agrees that the April 1948 progress reports do not contain a description or disclosure of its patent and that the term "rotational" is nowhere expressly employed until a report of February 1, 1949, but it argues that the reports do, in part, relate to rotational casting, and that Molitor's testimony was truthful. Upon its petition for reconsideration below strong proof thereof was submitted by Sun in the form of the corroborating testimony at the Cleveland trial of the factory manager at Sun in 1948, Chester A. Lile, who had left the employ of Sun in 1951, and the corrborating affidavits of Ernest Melmick and William Lantz, former employees of Sun, who, like Lile, were also familiar wih Molitor's work. On this evidence we are convinced that there is substance to Sun's position, and that the inference that these progress reports were changed or in any manner deceptively employed is ill-founded. These witnesses were disinterested neutral persons at the time of their testimony, and had no motive to participate in the organized plan of fabrication the district court found.

██ Among other "important items" recorded by the court as evidencing the alleged perjury are at least two factors markedly inappropriate to include as a basis for so serious a determination. First, the failure to file a patent application for more than two years after the claimed date of invention is hardly a significant enough irregularity to justify an inference that an intentional backward adjustment of the date of invention had occurred. The delay could have been occasioned by any one of a number of things. Moreover, even under the district court's hypothesis that the actual date of discovery was no earlier than October 1948 [15] or February 1, 1949,[16] the time interval between the date of invention and the date of patent application still exceeds one year. That a year's delay is a justifiable one, as the district court opinion necessarily implies, but a delay of two years is not justifiable, seems to us to be unclear as a distinction.

██ Second, in holding false the uncontradicted corroborated testimony of Sun's president, Thomas W. Smith, Jr., concerning a midnight phone call from Molitor urging him to go to the plant to see a successful sample of a rotationally cast toy lamb, the court noted that Smith had also falsified testimony earlier in this action in an affidavit he had filed in support of a motion to quash the service of summons for lack of *in personam* jurisdiction. The affidavit contains a collection of assertions, which, in substance, deny that Sun did business in New York and that the Lawrence R. Schmidt Company, upon whom service of process was made, was in any way under Sun's dominion.[17] The motion was

---

15. The district court reading of the November 30, 1956 letter, *supra*, finds October 1948 the earliest possible invention date.

16. It is in the February 1, 1949 progress report that Molitor fully discusses for the first time in writing his method of producing hollow objects through rotational casting.

17. This affidavit reads as follows:
Thomas W. Smith, Jr., being duly sworn, deposes and says:

I am the president of The Sun Rubber Company, a corporation of Ohio and not licensed to do business in the State of New York, having its office and only place of business at 366 Fairview, Barberton, Ohio.

I am advised that on Monday, November 14, 1960, an attempt was made to obtain service of a summons and complaint in the subject civil action on a Mr. Lawrence R. Schmidt, the president of Lawrence R. Schmidt and Company

granted, but reversed and remanded on appeal for consideration of additional evidence. On remand, the district court, MacMahon, J., denied the motion, simply finding that by reason of the solicitation of orders by Schmidt for Sun, a solicitation admitted by Smith in his affidavit, "The Sun Rubber Company is doing business in this district and is, therefore, amenable to process here." [18] Judge Frankel, however, erroneously concluded:

> The statement is now conceded to have been false. But it required an appeal from an order of dismissal to arrive at that concession.

The affidavit was quite clearly no more than a typical affidavit in support of a claim of no jurisdiction. Its falsity was never admitted and no court has ever found anything stated in it to be factually erroneous, but only that the conclusion of law the affiant drew from the facts was an unsound conclusion.

The finding of perjury was also based upon other inferences which it suffices to say in light of the substantial errors already discussed are not sufficiently supported by the record. In summary, although we are definitely mindful that the trial judge is better able than we to evaluate the credibility of witnesses, we hold the district court's finding of perjury was clearly erroneous. Therefore, the judgment below is reversed and remanded for a district court reconsideration of all the issues pertaining to patentability. And, accordingly, the judgment awarding Barr Rubber its attorney fees is reversed.

## IV.

◼ Moreover, we question the propriety of the trial court's extensive reliance upon the record of the earlier Ohio litigation without even hinting to the parties that the record would play such a large, if not a determinative, role in the present case. Cf. Ohio Bell Tel. Co. v.

doing business at Room 306, 200 Fifth Avenue, New York, N. Y.

Lawrence R. Schmidt and Company is a manufacturers' representative selling products manufactured by The Sun Rubber Company. The compensation of Lawrence R. Schmidt and Company for selling products manufactured by The Sun Rubber Company is determined on a straight commission basis. The activities of the Lawrence R. Schmidt and Company in the field selling products manufactured by The Sun Rubber Company are not controlled, directed or managed by The Sun Rubber Company. Neither The Sun Rubber Company, nor I personally, nor to my knowledge any officer or director of The Sun Rubber Company, owns any of the stock of Lawrence R. Schmidt and Company. The Sun Rubber Company does not pay the rent nor contribute in any way to the expenses and overhead incurred by the business operations of Lawrence R. Schmidt and Company.

None of the employees of Lawrence R. Schmidt and Company are on the payroll of nor do they receive any salary, remuneration or gratuity from The Sun Rubber Company.

Any and all orders for products manufactured by The Sun Rubber Company and taken, received or solicited by

Lawrence R. Schmidt and Company are transmitted in a standard form, as evidenced by two exemplary order documents attached hereto and identified as Exhibits B–1 and B–2, to The Sun Rubber Company at its office in Barberton, Ohio. The Sun Rubber Company accepts the order, does all the billing, and ships the ordered products or merchandise directly to the purchaser.

Referring specifically to Exhibits B–1 and B–2, there will be noted on the face thereof a rectangular stamped block referring to "Salesman," "Rate of Comm.," "Prices & Disc.," "Per," and "Credit OK." This stamp is routinely applied to orders received from the Lawrence R. Schmidt and Company at the office of The Sun Rubber Company in Barberton, Ohio. The additional stamp on these orders reading "This Order Typed & Checked" is also applied at the office of The Sun Rubber Company.

Other than as stated and as evidenced above, Lawrence R. Schmidt and Company performs no other functions on behalf of The Sun Rubber Company.

Thomas W. Smith, Jr.

18. No. 60 Civ. 4327 (SDNY November 15, 1961).

Pub. Util. Comm'n, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). In so doing, the trial judge exceeded the bounds of judicial notice,[19] and thereby denied Sun an effective opportunity to object, examine and rebut the matters noticed. This was especially critical here for if it is arguable that Sun was put on notice that an issue of perjury existed in the case the notice it received lacked the specificity one charged with such serious criminal behavior ought to have been accorded. Only a single passage in the pretrial order[20] and another in Barr's pretrial brief[21] refer in any way to any issue of perjury. The latter points away from the locus of the alleged perjury rather than toward it, and the former is much too general. And, while it is arguable that a trial judge may take notice of perjury on his own motion,[22] the par-

ties should be made aware that the issue exists and be afforded an opportunity to litigate it. For example, if there had been adequate notice to Sun that the success of its litigation could conceivably turn on the issue of its perjury, crucial aspects of the Ohio proceedings such as the testimony of Chester Lile and the documents proving Sun's knowledge of a prior invention claim before November 30, 1956, evidentiary items apparently overlooked by the court below—would have undoubtedly been brought to the court's attention by Sun.

### V.

 The motion to join the B. F. Goodrich Company and the McNeil Corporation was made pursuant to Rule 20, Fed.R.Civ.P. 20.[23] Rule 20, unlike its

19. See United States v. Doyle, 348 F.2d 715, 719 (2 Cir. 1965), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84; Funk v. C. I. R., 163 F.2d 796, 800–801 & n. 5 (3 Cir. 1947).

The taking of judicial notice never precludes the litigants from contesting the propriety thereof.

20. The passage referred to reads:

3. Whether the defendant Sun directly or indirectly has abused the patent in suit by using or attempting to use said patent to obtain a monopoly beyond the scope of its claims, in

 \* \* \* \* \*

(i) suppressing or attempting to suppress evidence of the invalidity of said Molitor patent and its unenforceability. Pre-Trial Order, September 27, 1966, Paragraph II, 3(i).

21. "The most damaging violation of the anti-trust laws, abuse of patent rights and unfair competition by Sun has been its consistent policy of perpetuating the essential fraud that Molitor invented the subject matter of the Molitor patent claims and in attempting to conceal other evidence of invalidity and unenforceability of the Molitor patent. This has ranged from (a) use of untrue statements under oath which were either deliberately perjured or made in reckless disregard of the truth [e. g., Smith's denial of the side agreement with Goodrich regarding Sun's obligation to purchase future Goodrich resins], to (b) conniving with licensees, concurrently with an agreement to

enforce patent rights against the licensee's competitors, to conceal evidence of invalidity of the subject matter of the Molitor claims [e. g., the express covenant in the Sun-Viceroy license, wherein Viceroy agreed not to assert that the subject matter of the Molitor claims was appropriated by Sun from Viceroy or derived by Sun from Viceroy], to black-mailing witnesses or prospective witnesses if they provided Barr with testimony or information adverse to Sun [e. g., Stefanski's obviously perjured testimony regarding the Stefanski (Kassal) prior use and the threat of suit against Edward Mobley]. Active fraud in procuring and/or maintaining a patent is a *per se* violation of the anti-trust laws. Walker Process Equipment Co. v. Food Machinery & Chemical Co. (1965), 382 U.S. 172 [86 S.Ct. 347, 15 L.Ed.2d 247]." Plaintiff's Trial Brief, Record, p. 12525.

22. Compare Hardinge Co., Inc. v. Jones & Laughlin Steel Corp., 164 F.Supp. 75, 77 (W.D.Pa.1958), aff'd, 275 F.2d 37 (3 Cir.), cert. denied, 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523 (1960) with Stiegele v. J. M. Moore Import-Export Co., 312 F.2d 588, 594 & n. 4 (2 Cir. 1963); General Industries Co. v. Birmingham Sound Reproducers, Ltd., 194 F.Supp. 693 (EDNY 1961).

23. While the parties are somewhat at odds as to whether the motion was made pursuant to Rule 19 or Rule 20, it is quite clear to us that it was a Rule 20 application. The original motion was spe-

counterpart, Rule 19, prescribes permissive, not necessary, joinder and specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice. Notwithstanding the fact that the delay in going to trial was probably as much the fault of Sun as that of Barr, the denial of Barr's motion to join two additional parties after four and one half years and six thousand pages of deposition testimony was not an abuse of discretion. To rule otherwise would have opened up a "Pandora's box" of discovery, further protracting an already unduly distended case.

The contention that the quantum of evidence adduced on the antitrust claims was restricted by the refusal of joinder, and, concomitantly, the refusal of additional discovery, is not persuasive. Ample opportunity to pursue these assertions was afforded and the gist of their intended substance was adequately before the court. The interlocutory refusal of joinder is therefore affirmed.

## VI.

■ Similarly, it is argued that the refusal to order the production of a letter of Goodrich's house counsel, Meyer, to the New York law firm of White & Case, allegedly germane to the claimed Sun-Goodrich conspiracy and relating to a claimed Sun-Goodrich license arrangement is reversible error in that it materially impaired Barr's opportunity to show the existence of the unlawful conspiracy claimed. We disagree. The denial of Barr's motion was without prejudice to efforts to obtain the document by way of a subpoena *duces tecum* during its pretrial examination of Meyer. Accordingly, a subpoena *duces tecum* was served, but objected to on the ground

that the letter was part of the attorney's work product. Thereafter Barr elected not to pursue the matter further. Additionally, the court, fully aware of the facts underlying Barr's challenge to the contract between Goodrich and Sun, held that, assuming all of Barr's allegations to be true, the arrangement was not unlawful as a matter of law. The order denying production of documents, therefore, is affirmed.

## VII.

■ Barr Rubber asserted and endeavored to prove a variety of antitrust and unfair competition charges. The district court held they were all "baseless in fact or in law or both." We agree.

The judgment below with respect to the antitrust and unfair competition issues is affirmed.

## VIII.

Sun moves we judicially notice three documents. Two of the three were part of the record in the Ohio case, and, as we already noted, *supra* at note 14, the motion is granted in the interest of justice despite the unnecessary delay in bringing the papers to our attention.

■ With regard to the third document, it is a copy of a patent issued to the Barr Rubber Company which Sun alleges is strikingly similar to the language employed by Sun in its earlier patent. Since we have remanded all the questions pertaining to patentability, we deny the motion to judicially notice this document, doing so without prejudice, however, to its renewal on remand. See Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 253 n. 1 (2 Cir. 1962) (Kaufman, J.), (United States patents may be judicially noted).

cifically phrased as "a motion to amend the complaint pursuant to Rule 15 * * * and to join, pursuant to Rule 21 * * *." Rule 21 merely provides that misjoinder is not grounds for dismissal, but that parties may be added "on such terms as are just." Necessarily, it relates back to Rules 19 and 20. Barr's

reply memorandum in support of its motion and the opinion of Judge Feinberg denying the motion both conclusively show the motion was made under Rule 20 and not under Rule 19. In any event, even if it were a Rule 19 motion, the denial thereof is not reversible error.

Sun's motion for one half the cost of printing the joint appendix, submitted by it at the time of oral argument, is denied as premature under FRAP 27, without prejudice to the submission of the full and complete bill for costs that will be filed after a final decision.

The judgment below is reversed and remanded in part, and affirmed in part.

Upon remand the proceedings below are to be conducted consistent with the approach taken herein relative to the issue of perjurious conduct on the part of Sun, its officers and employees.