James W. CAROLAN

v.

CENTRAL FREIGHT LINES, INC.

Civ. A. No. B–77–519–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

May 16, 1980.

Robert Q. Keith, Patricia D. Chamblin, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for James W. Carolan.

A. J. Harper, II, Brian S. Greig, Houston, Fulbright & Jaworski, Austin, Tex., for Central Freight Lines, Inc.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

This action is brought by James W. Carolan ("Carolan") alleging a violation of the Age Discrimination in Employment Act ("ADEA" or "Act"), 29 U.S.C. §§ 621–634, when he was discharged as an employee by Central Freight Lines, Inc. ("Central Freight") on 21 February 1977. See 29

---

1. This memorandum opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52. Trial by jury, see generally *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), was expressly waived by both parties to the action.

U.S.C. §§ 626(c) (private cause of action). Central Freight is a business engaged in an industry affecting commerce with twenty or more employees and as such is an "employer" subject to the provisions of the ADEA. See 29 U.S.C. § 630(b). The Court has jurisdiction over the subject matter of this action.[2] See 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1337 (commerce); 29 U.S.C. §§ 216(b), 626(b), (c); *cf. Jacobi v. High Point Label, Inc.*, 442 F.Supp. 518 (M.D.N.C.1977) (jurisdiction on removal of action from state court).

### The Defendant

The Defendant, Central Freight, is a common carrier of freight by truck within the state of Texas. Founded in 1925 with one truck, this family business has grown into a sizeable operation. It remains, however, employee owned. Its headquarters are in Waco, Texas.

### The Plaintiff

James W. Carolan was born on 20 January 1920. He began his association with Central Freight when, at the age of 18, he was employed as a general office clerk. Beginning in 1938 and continuing for the next 16 years Carolan worked on and off for Central Freight. He was again hired in October 1954 and on 20 May 1955 Carolan was installed as manager of Central Freight's Sabine-Neches Area Terminal in the Beaumont, Texas vicinity.

As a terminal manager, Carolan was responsible for managing all aspects of a trucking terminal: employees, customer relations, safety, processing claims, and maintenance of equipment. During his tenure, the tonnage handled by the Sabine-Neches Area Terminal increased three to four times and the number of employees at the terminal increased approximately six fold.

### The Discharge

On 21 February 1977, Carolan, then age 57, was discharged by Central Freight.[3] He had been employed by Central Freight for approximately 34 years—the last 22 of which were consecutive. He was replaced as terminal manager by Ronnie Domino. Mr. Domino was 34 years of age.

### The ADEA

At the time of Carolan's release by Central Freight, the ADEA protected persons at least 40 and less than 65 from unlawful discrimination in employment.[4] 29 U.S.C.A. § 631 (West 1975) (amended 1978); see generally 4 A. Larson, *Employment Discrimination* § 98.00 (1978). A *prima facie* case under the Act is established by proof:

1) that the plaintiff was a member of the protected age group;

2) that the plaintiff was involuntarily retired or discharged;

3) that the plaintiff was replaced with a person outside the protected age group; and

4) that the plaintiff was qualified to do the job.

2. Carolan complied with the jurisdictional prerequisites of an age discrimination action in effect when suit was filed in the district court by:
   (a) notifying the Secretary of Labor within 180 days after the allegedly unlawful discharge; and
   (b) notifying the Secretary of Labor of his intent to file suit not less than 60 days prior to the institution of this action.
   29 U.S.C.A. § 626(d) (West 1975) (amended 1978).

3. Although the Court does not believe that the circumstances surrounding Carolan's discharge are evidence of a violation of the ADEA, it does feel compelled to make this ungentlemanly behavior part of the record if only in a footnote. From the testimony adduced at trial, it appears that Carolan was asked to pick up Don Thompson and another Central Freight employee who were arriving at the airport from the Waco headquarters. After driving them to the Red Carpet Inn, a local motel, Carolan was called into Thompson's room. Thompson, who was not one of Carolan's supervisors, then informed him that the decision had been made in Waco to fire him immediately. Only a very cursory explanation was given by Thompson. A written explanation was never supplied.

4. The ADEA was amended in 1978 to enlarge the class of protected persons from those "at least forty years of age but less than sixty-five years of age," 29 U.S.C.A. § 631 (West 1975) (amended 1978), to those "at least 40 years of age but less than 70 years of age," 29 U.S.C.A. § 631(a) (West Supp.1980).

See *Marshall v. Airpax Electronics, Inc.*, 595 F.2d 1043, 1044 (5th Cir. 1979); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979); *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735–36 (5th Cir. 1977); *Lindsey v. Southwestern Bell Telephone Co.*, 546 F.2d 1123, 1124 n. 2 (5th Cir. 1977).

Central Freight admits that the first three elements of a *prima facie* case have been established. Carolan was a member of the protected age group, was discharged, and was replaced with a person outside the protected group. At issue is only whether Carolan was qualified to do his job at Central Freight.

The Court concludes that the evidence presented preponderates in favor of a finding that Carolan was qualified to perform his job at Central Freight and that a *prima facie* case was thereby established. Carolan had served as manager of the Sabine-Neches Area Terminal for over 20 years. He received substantial compensation which increased annually during his tenure. Carolan also served on Central Freight's board of directors and as a trustee on the employee's pension and profit sharing plan. Indeed, Central Freight was candid enough to admit in its post-trial brief that "[t]here [is] no quarrel with his abilities relating to the shipment of freight at the terminal." Post-Trial Brief of Central Freight, p. 10.

### The Burden of Proof

Once a *prima facie* case of a violation of the ADEA is established, the defendant is then required to go forward with evidence articulating reasonable factors other than age for the action taken toward the plaintiff. *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 590 (5th Cir. 1978); *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir. 1977); *cf. Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980) (Title VII action). Once the defendant has "demonstrate[d] reasonable

factors other than age," *Connelly v. Joseph Schlitz Brewing Co.*, 600 F.2d 461, 462 (5th Cir. 1979), such as a discharge for "good cause," see *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 591–92 (5th Cir. 1978), the plaintiff can only prevail by proving that the reasons articulated by the defendant are a pretext and that he was discriminated against "because of" his age. 29 U.S.C. § 623. "The burden of persuasion, often called the risk of non-persuasion never shifts; it remains upon the ADEA plaintiff." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 590 (5th Cir. 1978); *Bittar v. Air Canada*, 512 F.2d 582 (5th Cir. 1975).

In order for the plaintiff to discharge his burden in an ADEA action he is required to prove by a preponderance of the evidence that, while age may not have been the exclusive or most compelling reason for discharge, it was a determining factor which made a difference in the decision to discharge him. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975). Thus age discrimination may exist:

a) even though age was not the sole or exclusive reason for discharge; or

b) even though the stated reason for discharge may have been a strong and even more compelling reason for discharge than age.[5]

*Id.*

To abstract, once the defendant introduces evidence of reasonable factors other than age for the plaintiff's discharge, the plaintiff must prove by a preponderance of the evidence that, although there may be multiple factors other than age in the decision to discharge him, one such factor was age and that factor made a difference in determining whether he was to be discharged.

### Central Freight's Contention

It is Central Freight's contention that it lost confidence in the ability of Carolan to

---

**5.** The Court recognizes that there may be a slight inconsistency between the different formulations devised and adopted by the Circuits. *Compare Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 n. 25 (1st Cir. 1979) *with Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975).

serve as manager of its Sabine-Naches Area Terminal and therefore discharged him. The Court believes that this is a legitimate reason for Carolan's discharge based upon good cause and that although no single incident maybe readily identified as the source of Central Freight's loss of confidence in Carolan's ability to manage, the cumulative weight of the evidence when taken as a whole supports this conclusion:

1) In 1965 Carolan was warned by the president of Central Freight, R. H. Linam, that his inability to work with fellow employees had placed his job in jeopardy. At that time, Carolan admitted his errors but promised to improve.

2) Over the years, and especially in 1972, the executive vice-president of Central Freight, W. W. Callan, Jr., discussed with Carolan complaints from line drivers and their reluctance to serve the Sabine-Neches Area Terminal because of Carolan's harsh treatment of them.

3) In 1974 Carolan ineptly handled a personnel matter involving John Williams, an employee who had an accident in a Central Freight vehicle. Complaints to management at Central Freight's Waco headquarters by Walter Downs and other employees resulted in a reversal of Carolan's decision to fire John Williams. At that time, Central Freight informed Carolan that the company had given him his last chance to improve.

4) Illustrative of Carolan's mistreatment of Beaumont employees was his actions toward John Williams after his accident in 1974. Carolan ordered him to sit in public view off the clock and without pay at the Sabine-Neches Area Terminal for over a week awaiting a meeting with him. Carolan repeatedly ignored requests by Williams to discuss the accident and have some decision reached on his employment status. When Carolan finally granted Williams permission to see

him, Williams, a Black employee, was summarily fired.

5) An incident arose in February 1977 immediately preceding Carolan's discharge involving nine employees and one supervisor who were eating candy from broken shipments on the loading dock. Carolan discharged only the two employees who admitted their participation, Williams and Downs (employees who had previously complained to Central Freight's Waco headquarters about Carolan's harsh treatment), and retained on the payroll the employees and supervisor who did not confess their involvement.[6]

### Carolan's Contentions

Having found that Central Freight had good cause to discharge Carolan, the Court further finds that Carolan has not been able to prove by a preponderance of the evidence that Central Freight's justification for Carolan's discharge was a mere pretext and that age made a difference in the decision to discharge him.

Carolan contends that a statement on 5 April 1977 by Central Freight's president, R. H. Linam, in a conversation he had with Carolan's son is evidence of an age-related factor in the decision to discharge him. This statement:

You know, Jim [Carolan] was from another school of thought. He ran things like the military where people answer to one person. The young people of today just will not stand for it, [sic] their attitudes are different from those of your Dad's and mine.

and two others:

I know we (Central Freight Lines) have never had labor problems at this terminal (SNAT) [Sabine-Neches Area Terminal] but there was a lot of hard feeling against your Dad.

**6.** Although evidence was presented at the trial by Central Freight of Carolan's poor relations with employees at the Sabine-Neches Area Terminal in the 1950's and early 1960's, the Court declines the Defendant's invitation to invoke these instances of mistreatment as justifying a

good cause discharge finding that they are too remote in time. The Court also finds that evidence of poor customer relations was so insubstantial as not to have played any part in Central Freight's decision to discharge Carolan.

> Your Dad had a way of remembering little things about people, of storing them up . . . never forgiving people. Like Artie Pickins, your Dad always thought Artie was against him . . . it just was not true.

were written down by Carolan's son during the conversation. They were presented at trial as documentary evidence and their accuracy was not denied by R. H. Linam when he testified.

█ Although it may be argued that the first of these statements with its reference to "young people" may evidence an illegal consideration of age, the Court believes that taken together these statements are not evidence of an unlawful consideration of age by Central Freight in discharging Carolan but rather reflect Central Freight's concern that Carolan was no longer able to function effectively as a Central Freight employee—especially as a member of management.

Additionally, Carolan offered evidence that on the very day he was fired, two other long-term employees, J. R. McConnaughey and Sam Wilkerson, were fired. McConnaughey, who was 54 years old and had been a Central Freight employee for 26 years, was terminal manager at Galveston. Wilkerson, who was approximately 60 years old and had been a Central Freight employee approximately 40 years, was assistant terminal manager. Both men were replaced with men under 40 years of age; McConnaughey's replacement was 26 years old.[7]

█ The Court is, however, unable to find from this example a pattern of replacing individuals of Carolan's age with younger men. See generally *Marshall v. Airpax Electronics, Inc.*, 595 F.2d 1043, 1045 (5th Cir. 1979); *Lindsey v. Southwestern Bell Telephone Co.*, 546 F.2d 1123, 1124 (5th Cir. 1977). In the year preceding Carolan's discharge, the Longview Terminal manager, Vallon, who was 41 years of age, was replaced by Harris, who was 53. Harris was subsequently replaced by Maugham, who was 52. Harris, when he was 55, was installed as the Waco Terminal manager. Clearly, Central Freight had no prohibition against persons within the protected age group, 40 to 65 at the time this action was initiated, see note 4 *supra*, from being placed in positions of authority such as terminal manager.

█ Further, the Court is unable to agree with Carolan's contention that younger terminal managers were transferred rather than discharged for cause. Of the sixteen terminal managers discharged for cause prior to Carolan's termination, one-half were less than 40 years of age and all but four were less than 50. Like Carolan, these men were discharged, not transferred, in spite of their age.

*Conclusion*

█ In sum, the Court concludes that Central Freight articulated a legitimate reason for discharging Carolan: a complete loss of confidence in his abilities because of repeated incidents of mishandling employees under his supervision and a failure to improve as a terminal manager despite these occurrences. The Court does not believe that Carolan proved that the stated reason for the discharge was a mere pretext and that age was a determining factor which made a difference in the decision to discharge him.

Having found no wrong, the Court need not consider a remedy.

---

7. While much of the live testimony of J. R. McConnaughey offered at trial was no doubt objectively accurate, the Court believes that many of the subject elements of his testimony were not credible and are given no weight by the Court in reaching its decision. This determination is made from the demeanor of the witness during his testimony at the trial, as well as the incredibility of much of his subjective testimony.