Regina C. GRAHAM

v.

RENBROOK SCHOOL.

Civ. No. H–87–79 (MJB).

United States District Court,
D. Connecticut.

July 21, 1988.

Helen Apostolidis, Robert McWeeny, McWeeny & Ferguson, West Hartford, Conn., for plaintiff.

Emanuel N. Psarakis, H. Bissell Carey, III, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

### I. Introduction

The plaintiff, Regina C. Graham, brought this suit under the Age Discrimination in Employment Act (the "ADEA" or the "Act"), 29 U.S.C. § 626(b), alleging that her

employer, defendant Renbrook School ("Renbrook"), discriminated against her on account of her age in failing to offer her one of a number of open positions following a reorganization that eliminated her former job. Renbrook has moved for summary judgment. It argues first that the facts alleged by Graham fail to establish a prima facie case of age discrimination, and in the alternative, that the plaintiff's alleged facts are legally insufficient to establish that the defendant's explanation of its actions was a pretext for discrimination on account of age.

## II. Facts

Regina Graham joined the faculty of Renbrook, a small, nonsectarian, private school located in West Hartford, Connecticut, as a fifth grade teacher, in the fall of 1970. The plaintiff holds an undergraduate degree in chemistry, biology and education, and a masters degree in education. She had taught already for eight years before coming to Renbrook. The record discloses ample evidence from which to conclude that she was both well liked and well respected as a teacher by students, parents, and at least some of her colleagues from the inception of her employment with the defendant school.[1]

An inference of Ms. Graham's success as a fifth grade teacher, and the esteem which she enjoyed in that capacity, can be drawn from the numerous commendations she received, as well as from the fact that she was named Head of the Middle School at Renbrook in 1980, while maintaining her existing teaching responsibilities. The Middle School encompassed the fourth and fifth grades of the school, all lower grades constituting the Lower School. In 1981 she assumed the administrative position of Middle School Head on a full time basis. She remained in this post until the end of the 1984/1985 academic year.

Notwithstanding the generally high regard for the plaintiff's performance as a teacher, and even initially as an administrator, she began to have difficulties as the Middle School Head, apparently as early as 1983.[2] Some teachers complained to Renbrook's Head Master, Richard Davis, that Ms. Graham's administrative style "was tending toward autocratic, was directive and insufficiently tolerant of their own wishes and desires, and their own judgments."

It is not clear how soon these complaints were brought to Ms. Graham's attention. She states that she was "puzzled," for example, when Mr. Davis wrote to her in September of 1984 imploring her to ensure that "an openness of mind and a willingness to negotiate real, legitimate differences will outweigh personal factors," particularly in her dealings with the Head of Renbrook's Lower School, and with teachers under her own supervision.

In response to Davis' September letter Ms. Graham increased her efforts "to foster the spirit of unity and cooperation among faculty...." Nonetheless Mr. Davis, and at least some of the teachers

---

**1.** Numerous favorable letters from parents and colleagues accompany the affidavit the plaintiff submitted in opposition to the instant motion.

**2.** Renbrook Head Master Richard Davis testified at his deposition that during the 1982–83 academic year he became aware of problems with respect to Ms. Graham's performance as Middle School Head. Like most of the defendant's evidence, Mr. Davis' testimony in this regard has not been challenged directly by the plaintiff. Instead of a direct attack on the defendant's documentary and deposition evidence, the plaintiff's approach seems to have been for the most part to present additional evidence of her own from which the court could conclude that the defendant's facts do not tell the whole story. In the few situations where the plaintiff's version of specific events is at odds with that re-counted by the defendant, the plaintiff's version has of course been adopted. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, where the plaintiff has failed specifically to counter the facts asserted by the defendant with facts of her own the court has concluded it is because she accepts them as true, even if she disputes the legal conclusions to be drawn from them in light of the additional evidence she herself has produced. *Cf.* Fed.R.Civ.P. 56(f). The court has been additionally hampered in figuring out exactly which of the defendant's proffered evidence the plaintiff intended to dispute by the fact that the statement of material facts in dispute she submitted pursuant to Local Rule 9(c) avers virtually no facts that contradict those presented by the defendant.

the plaintiff supervised, remained dissatisfied with her performance. In December of 1984 Davis wrote the plaintiff again to outline, at considerable length, various perceived shortcomings in the performance of her job, all of which related, directly or indirectly, to her ability to get along with her colleagues. In this letter he also invited her to contact Renbrook trustees if she felt his criticism "unfair," which she appears to have chosen not to do.

Around this time Renbrook hired a private consulting firm, Heath Consultants, to conduct an evaluation of the school, apparently focusing particularly upon its administrative structure and relationships between employees. Heath concluded that among the problems facing the school was the "very low morale" of the Middle School faculty, which resulted from "deep dissatisfaction with the head of the middle school." [3]

Early in 1985 the decision was made to do away with Renbrook's Middle School (which had encompassed the fourth and fifth grades) as a separate administrative division, and merge its functions with those of the Lower School (which encompassed all lower grades). An aspect of this reorganization was the elimination of Ms. Graham's position. She was asked by Mr. Davis in March of 1985 to take a paid leave of absence for the following academic year because he "felt the transition of combining the Middle and Lower Schools would be easier if [she] was not there while it was taking place." Mr. Davis indicated that the plaintiff would be reemployed in a new position once the change was accomplished, a commitment that was reaffirmed, either directly or by implication, on numerous subsequent occasions. Reluctantly, Ms. Graham agreed to the paid leave, with the clear expectation that she would indeed return to Renbrook in another capacity.

The record discloses several attempts to match the plaintiff with a new job at Renbrook over the course of the next year. At least one such opportunity was rejected by Ms. Graham unilaterally. Later in the 1985–86 academic year, however, Davis began to doubt the advisability of offering any future position to the plaintiff. The comments of Eddie Gengras, a former Vice President of Renbrook's Board of Trustees, and at that time the Vice Chairman of the school's Development Committee, appear to have been particularly influential in bringing Davis to this conclusion. In response to Gengras' expressed opinion that Mr. Davis did not realize "the extent of apprehension over [Ms. Graham's] return" on the part of Renbrook's small faculty, Davis polled some 25 Renbrook teachers who he felt were relatively neutral in their feelings toward the plaintiff. Although the results of Davis' survey, which was conducted anonymously and confidentially, were not unanimous, they tended to substantiate Gengras' claim that negative feelings towards Ms. Graham ran quite deep. The conclusion that Graham should not be invited back to Renbrook in any capacity was underscored when the possibility of offering her one of a number of teaching positions opening up for the 1986–87 academic year was discussed at a meeting of the Renbrook Board of Trustees. Chris Ladd, a trustee chosen by Renbrook faculty members as their representative, forcefully expressed the view that Ms. Graham had "estranged herself from so many of the faculty" that it would not be "an appropriate thing to offer her a faculty position at this time." [4] In February of 1986 Ms. Gra-

**3.** The plaintiff has proffered evidence that casts some doubt on the accuracy of certain employee questionnaires Heath may have used in drawing this conclusion. She suggests that the wording of the questionnaire might have led some of her faculty to respond on the assumption that the questions pertained to Mr. Davis's performance rather than her own. The accuracy of Heath's conclusions is, however, not of great significance to the plaintiff's case. She does not contest that the independent consultant reached the conclusion stated, or suggest that a discrimina-

tory motive influenced the study in any way. Furthermore the defendant has not indicated that the study was influential in its eventual decision not to offer any future position to the plaintiff.

**4.** The plaintiff claims that both Chris Ladd's statement, and the statement of Eddie Gengras referred to above constitute inadmissible hearsay. The court disagrees. The defendant is charged with failing to offer Graham an open position because of her age. The school re-

ham was informed that the school would provide her with another year's paid leave and a summer sabbatical grant, and in March the President of Renbrook's Board of Trustees wrote her explaining that "after a careful evaluation of the needs and the best interest of the school" the Board would not offer her any new position. The plaintiff was 59 years of age at this time.

In addition to the defendant's largely unchallenged evidence of the problems that some Renbrook employees felt Ms. Graham had in getting along with her colleagues, the plaintiff has presented voluminous evidence of her own showing that she also had defenders, who respected and like her, and who placed the blame elsewhere for the apparently undeniable disharmony among the school's faculty.[5] However, despite the suggestion of a significant difference of opinion among at least some faculty as to Ms. Graham's role in causing tensions at Renbrook, very little of the plaintiff's proffered evidence touches even inferentially on her claim that age was a motivating factor in the school's decision to eliminate her position, and not to offer her a new one.

The plaintiff has pointed to three statements by Mr. Davis which she claims evince a motivation to discriminate against her on account of her age. One such statement Davis allegedly made to Ms. Graham herself, during the meeting in which he first requested her to take a leave of absence. It is claimed he commented: "Jean, you don't want to work the rest of your life." The other two remarks claimed to provide at least circumstantial evidence of age discrimination were allegedly made concerning candidates for Middle School faculty positions whom Graham had recommended to Davis. In the first such instance Davis is claimed to have expressed the opinion that an applicant, who Graham judged to be in her late forties or early fifties, would not "fit in with the younger teachers." In the second case, involving an applicant who the plaintiff guessed to be in her fifties, Davis allegedly queried "why would someone her age want to change positions?"[6]

### III. Discussion

#### A. The Plaintiff's Prima Facie Case

█ The first basis upon which defendant Renbrook School urges the court to grant summary judgment is Ms. Graham's alleged failure to establish a prima facie case of discrimination under the *McDonnell Douglas* formula commonly relied upon by age discrimination plaintiffs to satisfy their initial burden of going forward. *See, e.g., Reed v. Signode Corp.*, 652 F.Supp. 129, 133–34 (D.Conn.1986) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Renbrook argues that its essentially uncontradicted evidence of extreme personality conflicts between the plaintiff and many members of the school's small faculty establishes that she was unqualified for any position with the school.

In age discrimination cases involving a challenged failure to hire, a plaintiff establishes a *McDonnell Douglas* prima facie case by showing: (1) that she was within the class protected by the ADEA; (2) that she sought and was qualified for a position for which the employer was seeking appli-

---

sponds that it took the challenged action upon the belief that ill will between the plaintiff and some members of its small faculty rendered her continued employment with the defendant inadvisable. The purpose of Gengras and Ladd's remarks is not to prove the Renbrok faculty indeed harbored the enmity the remarks express, but rather to show the school administration *believed* faculty members felt this way when it decided not to ask Graham back.

5. Particularly significant in this regard are the results of an "Evaluation of Administrative Personnel" provided to Renbrook faculty members by Mr. Davis in January of 1985. A majority of those responding indicated they were "very satisfied" or "mostly satisfied" with Ms. Graham's performance as Middle School Head, according to her own analysis of the data.

6. Certain of the plaintiff's interrogatory responses indicate that she also believed that Renbrook's hiring statistics between September of 1985 and April of 1987 would bolster her claim of age discrimination. Because she has not presented such statistics or argued their significance in opposition to the instant motion, the court assumes she has concluded that their probative value is minimal.

cants; (3) that she was not hired despite her qualifications; and (4) that the employer hired instead a substantially younger person or kept the position open to receive one. *Id.* It is unmistakably clear that a sine qua non of a *McDonnell Douglas* prima facie case is that the plaintiff was *qualified* for the job or jobs she sought.

The defendant's argument with respect to Ms. Graham's qualifications is troubling. Although the evidence concerning Ms. Graham's inability to relate harmoniously with her colleagues would be relevant to her qualifications for a supervisory position with Renbrook, *see, e.g., Carolan v. Central Freight Lines, Inc.,* 489 F.Supp. 941, 945 (E.D.Tex.1980), the positions which she sought and was denied were not of a supervisory nature. With respect to her qualifications for one of the many *teaching* positions the plaintiff sought Renbrook has for the most part not contested her ample evidence, not only that she was well qualified to teach, but even that her students and their parents found her teaching abilities worthy of special commendation.

It is also significant, from the point of view of successfully framing a *McDonnell Douglas* prima facie case, that the defendant itself found the plaintiff to be qualified as a teacher when it hired her in that capacity in the first place. As Judge Campbell pointed out in the often cited case of *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979), "[w]e can assume that, unless the employee's job has been redefined, the fact that [she] was hired initially indicates that [she] has the basic qualifications for the job, in terms of degrees, certificates, skills and experience." *Id.* at 1013 n. 10. Renbrook has submitted no evidence showing that the qualifications for teaching positions at the school had been redefined between the time Ms. Graham was first hired to teach and the period when it was decided not to consider her for future teaching positions. The court must therefore conclude that the plaintiff has met her burden with regard to establishing that she was qualified for a teaching position for purposes of making out a *McDonnell Douglas* prima facie case.

**B. *The Challenge to the Plaintiff's Claim of Pretext***

Even where an ADEA plaintiff is successful in establishing a *McDonnell Douglas* prima facie case by a preponderance of the evidence, the defendant employer may rebut the plaintiff's prima facie showing simply by " 'articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection.' " *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (quoting *McDonnell Douglas v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the defendant does articulate such an explanation, the plaintiff then has the burden to show that the defendant's articulated reasons "were not its true reasons, but were a pretext for discrimination." *Id.* The defendant has identified the plaintiff's inability to relate harmoniously with co-workers as its reason for not offering her the position she desired, and the relevant case law clearly shows that the ability to relate harmoniously is a "legitimate, nondiscriminatory" explanation for the school's conduct. *See Phillips v. Adult Probation Department,* 491 F.2d 951 (9th Cir.1974) (an employer's interest in "the efficiency of its employees in the performance of their tasks 'comprehends the maintenance of discipline, the prevalence of harmony among co-workers, and the elimination of conduct ... thought to have "impeded" the proper performance of [their] duties.' ") (citations omitted); *see also Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.) (inability to get along with others), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Lieberman v. Gant,* 630 F.2d 60, 65–66 (2d Cir.1980); *Carolan,* 489 F.Supp. at 945. The defendant argues further that the evidence offered by the plaintiff is legally inadequate to prove that its reason for failing to extend a job offer to her was a pretext for unlawful discrimination. The court agrees.

**1. Proving Pretext**

Before weighing the plaintiff's possible evidence of pretext it is helpful to have clearly in mind the nature of her burden.

### a. Substantiality (Quantum) of Evidence Required

■ To establish pretext the record as a whole must include sufficient facts to support a finding that the defendant's acts constituted intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff must thus present "substantial evidence" of pretext in order to prevail.[7] *Reeves v. General Foods Corp.*, 682 F.2d 515, 521–23 (5th Cir.1982);[8] *see also N.L.R.B. v. Softwater Laundry, Inc.*, 346 F.2d 930, 936 (5th Cir.1965) (unlawful motivation prompting discharge of employee in N.L.R.B. context must be established by substantial evidence on record as a whole).[9]

### b. The Quality of the Proof Required

■ Other courts have suggested that ADEA plaintiffs need only prove pretext by a preponderance of the evidence, the evidentiary standard applicable to a plaintiff's prima facie case. *See, e.g., Haskell v.*

*Kaman Corp.*, 743 F.2d 113, 119 n. 1 (2d Cir.1984); *see also Harping v. Continental Oil Co.*, 628 F.2d 406 (5th Cir.1980).[10] However, a plaintiff cannot discharge her burden with respect to proof of pretext solely on the ground that she may have proved a prima facie case by a preponderance of the evidence. Indeed the "clear and convincing evidence" standard applicable to issues of fraud is logically the standard by which pretext in age discrimination cases should be established.

The "clear and convincing evidence" standard has long been a feature of our common law in certain causes of action which, despite their civil nature, involve a claim of intentional dishonesty or moral turpitude. 9 *Wigmore on Evidence* § 2498 (Chadbourn rev. 1981); 37 C.J.S. *Fraud* § 114 (1981). In cases where federal law supplies the rule of decision clear and convincing evidence has been routinely required, for example, for proof of fraud,

7. It has been suggested in dicta that mere disbelief of the explanation a defendant employer gives for a challenged employment decision may be sufficient to establish that explanation as a pretext. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Disbelief of testimony, however, does not alone establish that the opposite of that testimony is in fact the truth. *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir.1952) (L. Hand, J.). It cannot, therefore, be considered as constituting *evidence* that is substantial. Furthermore, even if, as an abstract proposition, it were permissible to infer the opposite merely because proffered testimony were disbelieved, it would still be an illogical leap in an age discrimination case to infer a discriminatory motive simply because the employer's own explanation of its conduct is disbelieved. *See, e.g., Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 903 (3d Cir.1987) (Hunter, J. dissenting) (even if defendant's explanation is untrue this does not establish that real motivation was discriminatory). It is confused logic to contend that what a defendant might have said could be used as a basis for imposing liability on him even if he never said it. What is imagined that the defendant might have said can in no way be considered as evidence.

8. A different panel of the fifth circuit has since called into question the continuing validity of *Reeves'* requirement of substantial evidence for proof of pretext in light of the Supreme Court's holding in *United States Postal Service Bd. of Gov. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), that intentional discrimina-

tion may be proven by circumstantial as well as direct evidence. *Thornbrough v. Columbus & Greenville Railroad Co.*, 760 F.2d 633, 640 n. 7 (5th Cir.1985). The court disagrees. Evidence may be circumstantial in nature and nonetheless also substantial in nature. *See, e.g., Markosky v. Mathews*, 435 F.Supp. 374, 378 (E.D.Pa.1977) (circumstantial evidence was substantial evidence for ALJ's decision).

9. The practice of looking to the N.L.R.B. standards on analogous questions arising in other types of employment discrimination cases is of course well established. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

10. The application of the preponderance standard to ADEA plaintiffs' alleged proof of pretext probably stems from unelaborated dicta in a Supreme Court case decided under Title VII. *See, e.g., Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 ("plaintiff must ... have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."). However, no case has been found in which either the Supreme Court or any lower court applying Supreme Court precedent has directly considered or discussed the question of the standard of proof required to prove pretext under Title VII or the ADEA. It must therefore be concluded that passing references to the preponderance standard do not represent a reasoned conclusion that it is the standard sufficient for proving a contention of pretext.

*Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120 (2d Cir.1970), as it is generally also in cases where state law applies, *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987); *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F.Supp. 548, 565 (D.Conn.1967).

The similarity between the elements of fraud and of pretext is striking indeed. Under federal common law fraud consists of five elements: "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation." *Pence v. United States*, 316 U.S. 332, 338, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510 (1941). A pretext claim includes all the elements of fraud except reliance by the plaintiff. Moreover, the elements shared by the two types of claim include all those involving the intentional mendacity that justifies the imposition of the "clear and convincing evidence" burden in the case of fraud. On this basis it is logical to require an age discrimination plaintiff to prove pretext—which is in essence a claim that the defendant lied to avoid liability for unlawful discrimination—by clear and convincing evidence.

The court is fortified in its conclusion that the "clear and convincing evidence" standard must apply to an age discrimination plaintiff's proof of pretext by the Second Circuit Court of Appeals' decision in the case of *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120 (2d Cir.1970). That case involved an allegation that the defendant had lied in the preparation of evidence for two civil patent validity cases. After reviewing the wide variety of contexts in which the "clear and convincing evidence" standard is applied to claims of fraud under federal law, Judge Waterman concluded that "[l]ogic and reason demand that no lower standard of proof be applied in assessing a charge of [civil] perjury...." *Id.* at 1120. Since an ADEA plaintiff's claim of pretext only arises after the defendant has articulated a reason for its actions which the plaintiff claims to be a deliberate falsehood, Judge Waterman's reasoning dictates the application of the

"clear and convincing evidence" standard to a claim of pretext as well.

**2. The Plaintiff's Evidence of Pretext**

■ The record is all but totally devoid of evidence to support a claim that Renbrook's proffered explanation for not offering Graham a teaching position was actually a pretext for age discrimination. Besides conclusory arguments of counsel to the effect that the defendant could not possibly have failed to reemploy a teacher with the plaintiff's experience merely because she couldn't get along harmoniously with other faculty, Graham has pointed to three statements allegedly made by Renbrook Head Master Richard Davis, apparently because she hopes that such statements evince a discriminatory motivation for the defendant's actions. The plaintiff herself, however, seems remarkably doubtful about the probative value of her evidence, conceding even that she "might agree that such statements in themselves are not sufficient to enable her to prevail on her claims of age discrimination...."

The first statement the plaintiff offers as proof that Renbrook's actions were actually motivated by discriminatory animus was allegedly made by Mr. Davis at the meeting in March of 1985 during which he first requested Ms. Graham to take a paid leave of absence while Renbrook consolidated its Middle and Lower Schools. Davis is alleged to have said to the plaintiff, "Jean, you don't want to work the rest of your life." As ostensible evidence of animus based upon Ms. Graham's age the comment is ambiguous in the extreme. Even if given its most incriminating possible construction the remark is simply "too slender a reed to carry the weight of the charge in this case against the evidence which refutes it." *Vaughan v. Buroughs Corp.*, 17 F.E.P. cas. (BNA) 865, 868 (E.D.Mich.1978).

The other two statements were allegedly made not in reference to the plaintiff, but with regard to apparently middle aged job applicants whom Graham had recommended to Davis. In one instance Davis is alleged to have expressed concern over whether a particular candidate would "fit

in" with younger teachers; on the other occasion he allegedly queried with respect to the applicant in question why someone her age would "want to change positions." The court notes that "[s]imilarly isolated remarks have been rejected by courts as insufficient in establishing an inference of age discrimination" even when made with respect to the plaintiff herself. *Mantione v. Ted Bates Advertising,* 38 F.E.P. cas. (BNA) 1457, 1462 (S.D.N.Y.1985) [available on WESTLAW, 1985 WL 2516]. Furthermore, Ms. Graham has not explained what exactly these apparently offhanded comments made to her years before regarding other job applicants show concerning her own situation.[11]

The court concludes that Davis' alleged statements are legally inadequate to prove that the defendant's cited reasons for its actions with respect to the plaintiff were a pretext for age discrimination, even if judged by the deferential "preponderance of the evidence" standard. When judged by the more rigorous "clear and convincing evidence" standard that the court finds applicable it becomes clearer still that Graham's pretext claim fails as a matter of law.

### IV. Conclusion

Although the plaintiff has adduced sufficient facts from which it could be concluded that she was qualified for a teaching position at Renbrook School, she has offered no substantial evidence indicating that the defendant's explanation of its actions was a pretext for unlawful discrimination on the basis of Ms. Graham's age. Accordingly, the defendant's motion for summary judgment must be granted.

SO ORDERED.

---

**11.** The plaintiff has not alleged that these two remarks are evidence of a pattern or practice of discrimination, and even if she had, it is clear they constitute an insufficient showing. *Haskell v. Kaman Corp.,* 743 F.2d 113, 121–22 (2d Cir. 1984); *see also Ste Marie v. Eastern Railroad Assoc.,* 650 F.2d 395, 406 (2d Cir.1981) (Friendly, J.) (few, isolated instances of alleged discrimination insufficient to show pattern or practice).